IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID L. MCCLIMANS,       )
                                   )    CASE NO. 4:14CV2751
               Plaintiff,     )
      v.                      )
                                   )
                                   )    MAGISTRATE JUDGE
COMMISSIONER OF SOCIAL     )    KENNETH S. McHARGH
SECURITY ADMINISTRATION,   )
                                   )    MEMORANDUM OPINION AND ORDER
              Defendant.    )

This case is before the Magistrate Judge pursuant to the consent of the parties.  (Doc. No. 12).  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff David McClimans' ("Plaintiff" or "McClimans") applications for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## I.  PROCEDURAL HISTORY

Plaintiff filed a Title II application for a period for disability and disability insurance benefits, and a Title XVI application for supplemental security income on November 2, 2007, alleging disability as of August 27, 2004.  (Tr. 74).  These applications were denied initially and on reconsideration.  (*Id.*).  A hearing was held before Administrative Law Judge James J. Pileggi ("previous ALJ") on September 9, 2009, where Plaintiff, represented by attorney Francis Martin,

testified, along with an impartial vocational expert, Fred A. Monaco.  (*Id.*).  Plaintiff's applications were denied, as was his request for review by the Appeals Council.  (Tr. 18, 74).

On January 4, 2011, Plaintiff again filed applications for benefits under Title II and Title XVI, alleging disability due to anxiety disorder, effects of thoracic sprain, and lumbar sprain pain. (Tr. 91, 105).  In both applications, Plaintiff alleged disability beginning November 4, 2009, the date of the decision of the previous ALJ.  (*Id.*).  These claims were denied initially on March 14, 2011, and upon reconsideration on May 4, 2011.  (*Id.*).  Plaintiff timely filed a written request for a hearing on June 14, 2011.  (Tr. 18).

A hearing was held before Administrative Law Judge ("ALJ") Robert C. King on August 16, 2012.  (Tr. 37-70).  Plaintiff appeared and testified at the hearing, and was represented by counsel, attorney Frances Martin.  (*Id.*).  Barbara Burke, an impartial vocational expert ("VE"), also appeared and testified at the hearing.  (*Id.*).

On May 15, 2013, the ALJ issued an unfavorable decision, concluding that Plaintiff was not disabled. (Tr. 18-29).  In his decision, the ALJ indicated Plaintiff was previously found "not disabled" with a residual functional capacity for a range of light work in an ALJ decision dated November 4, 2009, from which Plaintiff did not seek further review.  (Tr. 22).  Applying Acquiescence Ruling 98-4(6) and *Drummond* (as more fully discussed below), the ALJ determined he was required to adopt the prior findings from that decision regarding Plaintiff's residual functioning capacity, and other required findings.  (Tr. 18-29).

The Appeals Council denied Plaintiff's request for review, making the ALJ's May 15, 2013, determination the final decision of the Commissioner. (Tr. 1-4).  Plaintiff now seeks judicial review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II.  EVIDENCE

A.  Personal Background Information

Plaintiff was born on July 4, 1959, and was 51-years-old on the alleged onset date.  (Tr. 46, 76, 109).  Plaintiff was thus considered a person "closely approaching advanced age" for disability purposes. 20 C.F.R. § 416.963(d).  Plaintiff completed the tenth grade but did not graduate from high school, and did not obtain a GED.  (Tr. 46).  Plaintiff has past relevant work as a roofer.  (*Id.*).

B.  Medical Evidence[1]

Plaintiff underwent a psychiatric diagnostic assessment on August 25, 2009.  (Tr. 310-24).  Plaintiff was diagnosed with generalized anxiety disorder and depressive disorder NOS, and the assessment noted he presented with moderate symptoms for both conditions.  (Tr. 311, 321).  The assessor indicated Plaintiff reported he had suffered a work injury five years prior, and had chronic intense pain since the injury.  (Tr. 311).  Assessment notes further showed Plaintiff stated he worried about his health and about money, was easily agitated, had difficulty concentrating and suffered from short-term memory deficits, and did not get restful sleep due to both pain and troubling thoughts about his situation.  (*Id.*).  Evaluation notes showed Plaintiff exhibited moderate impairments of memory and attention/concentration, and he stated he could not sit for long periods of time (Tr. 313, 324).  Plaintiff further stated he had attended computer classes to try to learn a new skill two years prior to the evaluation, but was unable to find a job after sending out over two hundred resumes, and that he regularly attended AA meetings and sometimes goes fishing.  (Tr. 313, 318).  Plaintiff terminated his psychiatric treatment on November 17, 2009, requesting his case be closed after becoming upset because he felt the agency was not helping him get social security benefits.  (Tr. 309).

---

[1] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.

1.  <u>Adon Weinberg, M.D.</u>

The record reflects that Plaintiff sought treatment from Adon Weinberg, M.D., from May of 2010 through August of 2012.  (Tr. 334-39, 348-83).  Treatment records consistently showed Dr. Weinberg assessed Plaintiff with thoracic and low back pain, as well as anxiety.  (Tr. 334, 337-39, 348).  Over the course of his treatment, Dr. Weinberg prescribed first Percocet, then Roxicodone, for his back pain, and Ativan for anxiety.  (*Id.*).  From May of 2010 through April of 2011, treatment notes showed Plaintiff complained of "burning pain" in his mid and lower back, rated on a 10-point pain scale as 9 out of 10 without medication, but lowered to 5 or 6 out of 10 with medication, and pain on motion testing of the thoracic and lumbar spine.  (*Id.*).  Notes dated April 19, 2011 included a reference to previous MRIs that showed degenerative disc disease, but did not elaborate on the findings.  (Tr. 348).

On May 10, 2011, Dr. Weinberg documented that Plaintiff reported "aching pain" in his mid and low back (and again noted previous MRIs showed degenerative disc disease), but that his pain was still reduced to 6 out of 10 when on medication.  (Tr. 351).  At this time Dr. Weinberg also documented that on physical examination Plaintiff was positive for wheezing, and assessed chronic obstructive pulmonary disease ("COPD"), but did not prescribe any medication or treatment for that condition.  (*Id.*).  Subsequent treatment notes continued to show similar findings relating to his back pain (consistently reporting 5 or 6 out of 10 pain scale when medicated, as well as pain on motion testing), although Dr. Weinberg added muscle spasms to his assessment on August 19, 2011, and his pain medication dosage was increased upon Plaintiff's request on May 7, 2012.  (Tr. 368).  On May 23, 2012, Plaintiff reported his pain level was 4 out of 10 when on the higher level of medication, stating it was "working great," and reported his pain down to 3 out of 10 on June 13, 2012.  (Tr. 366-67).  Further, while subsequent

examinations continued to show Plaintiff was positive for wheezing until March 9, 2012, records made no further mention or diagnosis of COPD, and Dr. Weinberg no longer noted wheezing in his examination notes after March 9, 2012.  (Tr. 360-83).

At the request of the agency, Dr. Weinberg completed and submitted a Physician Questionnaire in April of 2011.  (Tr. 347-50).  Dr. Weinberg stated Plaintiff suffered from thoracic pain since August 27, 2004, after suffering a work injury.  (Tr. 347).  The questionnaire further indicated he had a limited range of motion in his spine of 45 degrees, but that he was able to perform fine and gross manipulation, and did not require an ambulatory aid.  (*Id.*).  Dr. Weintraub included examination notes dated April 19, 2011, which were consistent with the treatment notes described above.  (Tr. 348).

Following Plaintiff's surgical consultation with Dr. Ugokwe, detailed below, Dr. Weinberg noted that, despite Dr. Ugokwe's suggestion that Plaintiff try using a nerve stimulator, a prior TENS unit trial indicated a nerve stimulator was not an option because the constant stimulation caused Plaintiff to experience severe headaches.  (Tr. 403).  As neither surgery nor the nerve stimulator were options for Plaintiff, Dr. Weinberg stated "it appears that Plaintiff will not be able to obtain any significant relief from his problem other than [his] current medications."  (*Id.*).  Dr. Weinberg further stated this information should be included in the medical record provided to the ALJ.  (*Id.*).

2.  Medical Imaging

Plaintiff underwent MRIs of his thoracic and lumbar spine on June 2, 2011.  Albert M. Bleggi, M.D., reviewed the images and reported the following impressions:

> [Lumbar Spine] Multilevel disc disease including shallow protruding discs
> L2-L4 but with no extruded disc.  Mild posterolateral extension of disc
> L3-L4 and L4-5 causing foraminal encroachment but without compromise

or nerve root entrapment.  Low grade facet arthropathy L3-L5 without overall AP stenosis.  No subcortical stress, osteoedema or spinal mass.

and

[Thoracic Spine] Shallow protruding disc T5-6 but no evidence of extruded disc.  No evidence of foraminal compromise, AP stenosis, subcortical stress or spinal mass.

(Tr. 358-59).  Plaintiff underwent another lumbar MRI on November 3, 2012, which was again interpreted by Dr. Bleggi.  (Tr. 386-87).  Imaging showed some normal, and some irregular, findings, and Dr. Bleggi provided the following impression:

Shallow disc protrusion L5-S1 with posterolateral extension compromising the foramina bilaterally without nerve root compression although causing AP stenosis of 8mm.  Disc desiccation L2 through L5 levels but with no extruded disc, foraminal compromise or nerve root entrapment.  AP stenosis 10 mm at L4-5.

(Tr. 386-87).

3. Kene Ugokwe, M.D.

On February 8, 2013, Plaintiff was evaluated by Kene Ugokwe, M.D, a neurological surgeon.  Plaintiff described his medical history of back pain as gradually worsening since onset, described as moderate with a severity of 7 out of 10 on the pain scale.  (Tr. 398).  Plaintiff reported his pain was the same all the time, with symptoms aggravated by standing, sitting, and lying down, and that he experienced stiffness, headaches, and weakness.  (*Id.*).  Review of his symptoms reported Plaintiff as negative for respiratory issues, and positive for back pain, weakness, and headaches.  (*Id.*).  Examination revealed normal strength and range of motion, with no edema or tenderness, normal muscle tone, and normal gait and reflexes.  (Tr. 399).  Dr. Ugokwe noted Plaintiff was neurologically stable and intact, and that both his lumbar and thoracic MRIs were unremarkable.  (*Id.*).  At that time, Dr. Ugokwe determined conventional

surgery would not be beneficial, but suggested a spinal cord stimulator trial might be helpful, and referred him back to his current pain management doctor.  (*Id.*).

4.  <u>Evidence Submitted Subsequent to Hearing</u>

After the hearing, Plaintiff submitted two Medical Source Statements completed by Dr. Weinberg.  In a check-box form relating to Plaintiff's physical limitations, dated September 11, 2013, Dr. Weinberg opined that Plaintiff was limited to occasionally lifting 10 pounds, frequently lifting 2 pounds, could occasionally reach, rarely push or pull, and could frequently perform fine and gross manipulation.  (Tr. 6-7).  Further, Dr. Weinberg limited Plaintiff to standing or walking a total of 30 minutes in an 8-hour work day, could only stand or walk 10 minutes without interruption, and was limited to sitting for a total of 20 minutes total, while only 10 minutes without interruption.  (Tr. 6).  According to the statement, Plaintiff could rarely climb, stoop, crouch, or kneel, could occasionally crawl, and could frequently balance.  (*Id.*).  Dr. Weinberg based these opinions on "in-office observation," but did not further explain or point to specific findings.  (Tr. 6-7).  Based on patient questioning, Dr. Weinberg noted Plaintiff had environmental restrictions including heights, moving machinery, temperature extremes, and noise, but that Plaintiff did not have restrictions relating to pulmonary irritants.  (Tr. 7).  Dr. Weinberg opined that Plaintiff experienced severe pain that interfered with concentration, would take Plaintiff off task, and would cause absenteeism.  (*Id.*).  He further concluded Plaintiff needed to alternate between sitting, standing, and walking at will, as well as required rests outside of usual breaks at least four times per hour, noting Plaintiff "cannot function without severe pain."  (*Id.*).

A Mental Medical Source Statement was also filled out by Dr. Weinberg on August 2, 2013.  (Tr. 8-9).  This check-box form indicated Plaintiff could occasionally follow work rules,

deal with the public, relate to co-workers, interact with supervisors, and deal with work stress, but rarely could maintain attention and concentration for 2 hours, work in coordination with or proximity to others, complete a normal workday and workweek without interruption from psychologically based symptoms, or perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 8). Dr. Weinberg opined Plaintiff could only occasionally perform intellectual functioning so as to fulfill complex, detailed, or simple job instructions, and could only occasionally socialize, relate predictably in social situations, and leave home on his own. (*Id.*). Dr. Weinberg did not support his conclusions with any evidence other than stating Plaintiff was diagnosed with anxiety disorder and sciatica with muscle spasms, and indicated Plaintiff was under his care for 5 years. (*Id.*).

C. <u>State Agency Consultants</u>

Plaintiff again underwent a consultative psychological evaluation with Kenneth Gruenfeld, Psy.D., on February 16, 2011. (Tr. 341-45). After evaluation, Dr. Gruenfeld diagnosed Plaintiff with Adjustment Disorder with depressed mood, noting he had financial and employment issues, and gave him a GAF score of 60, which indicated moderate symptoms. (Tr. 344-45). Plaintiff expressed to Dr. Gruenfeld that his mental health issues did not impact his ability to pay bills, do complicated chores, or manage medical issues, and that he was able to drive and use public transportation. (Tr. 344). However, Plaintiff included that his mental health issues impacted his motivation to engage in activities of daily living, but that Ativan helped keep him calm and helped him sleep. (Tr. 343-44). Dr. Gruenfeld assessed Plaintiff had a mild impairment in his ability to relate to others (including fellow workers and supervisors), no impairment in his ability to understand and follow instructions, moderate impairments in the

8

areas of concentration, persistence, or pace, and moderate impairment to withstand work stress and pressure.  (Tr. 344).

The record also contained opinions of state agency reviewers at both the initial level and on reconsideration.  At the initial level, after reviewing the evidence of record, on March 8, 2011 Paul Morton, M.D., determined Plaintiff was able to occasionally lift/carry 20 pounds, and frequently 10 pounds, with an unlimited ability for pushing and pulling.  (Tr. 98).  Dr. Morton opined Plaintiff could stand, walk, and sit a total of 6 hours in an 8 hour work day, and that he could frequently climb ramps and stairs, stoop, crouch, and crawl, and occasionally climb ladders, ropes, and scaffolds.  (Tr. 98-99).  Dr. Morton found Plaintiff had no environmental limitations.  (Tr. 99).  These limitations were affirmed on reconsideration by Eli Perencevich, D.O., on April 21, 2011.  (Tr. 139-41).

Regarding his mental RFC, Tonnie Hoyle, Psy. D., determined Plaintiff had sustained concentration and persistence limitations, but found he was not significantly limited in his ability to maintain attention and concentration, his ability to work in coordination or in proximity with others, and his ability to complete a normal workday and workweek without interruption from psychologically based symptoms.  (Tr. 99-100).  Further, although she found Plaintiff to have social interaction limitations, she found no significant limitations in this category, except that Plaintiff was moderately limited in his ability to respond appropriately to changes in the work setting.  (Tr. 100-01).  Dr. Hoyle further stated Plaintiff could interact with the general public, co-workers, and supervisors at a superficial level, and that he could perform tasks in an environment with infrequent changes in job responsibilities.  (*Id.*).  These limitations were affirmed on reconsideration by Kristen Haskins, Psy.D., on April 27, 2011.  (Tr. 141-42).

D.  Previous ALJ Findings

9

In his November 4, 2009 determination denying benefits, the previous ALJ found that, despite having severe impairments, Plaintiff was not disabled as defined by the Social Security Act. (Tr. 74-85). The previous ALJ determined Plaintiff had the following severe impairments: mild degenerative changes in the thoracic and lumbar spines, generalized anxiety, depression, and obesity, but did not meet or medically equal any of the Listings. (Tr. 77). He found Plaintiff was limited to light work but could not perform work involving crawling, kneeling, climbing, balancing, operation of foot controls, bending at the waist to 90°, or work on heights. (Tr. 78). Plaintiff was limited to performing work involving only simple, repetitive work with routine processes and settings; could not perform high stress work (defined as work involving high quotas or close attention to quality production standards); could not perform work involving more than incidental interaction with the public; and could not perform team work. (*Id.*). Further, supported by testimony from a vocational expert, the previous ALJ determined Plaintiff was not capable of performing past relevant work, but that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, and was thus not disabled. (Tr. 83-84).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant's insured status for purposes of entitlement to a period of disability and disability insurance benefits under Title II of the Social Security Act expired on December 31, 2009.

2. There have been no changes in the law, regulations or rulings affecting the findings or the method for arriving at the finding in the prior ALJ decision dated November 4, 2009.

3. There exists no new and material evidence concerning the claimant's physical or mental health when compared to the evidence consider[ed] in the prior ALJ decision dated November 4, 2009.

4. The claimant has not engaged in substantial gainful activity since November 4, 2009, the alleged onset date.

5. The claimant has the following severe impairments:  (1) degenerative disc disease and osteoarthritis of the thoracic spine and lumbar spine, per MRIs on June 2, 2011, (2) obesity, (3) chronic obstructive pulmonary disease, (4) anxiety, and (5) adjustment disorder [with] depressed mood.

6. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

7. After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant cannot perform work involving crawling, kneeling, climbing, balancing, or work on heights.  The claimant cannot perform work involving operation of foot controls, or work involving bending at the waist at ninety degrees.  The claimant is limited to performing work involving only simple, repetitive work with routine processes and settings.  The claimant cannot perform high stress work (which is defined as work involving high quotas or close attention to quality production standards). The claimant cannot perform work involving more than incidental interaction with the public.  The claimant cannot perform any team work.

8. The claimant is unable to perform any past relevant work.

9. The claimant was born on July 4, 1959 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date.

10. The claimant has a limited education and is able to communicate in English.

11. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

12. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

13. The claimant has not been under a disability, as defined in the Social Security Act, from November 4, 2009, through the date of this decision.

(Tr. 22-29) (internal citations omitted).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its

decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

Plaintiff maintains that the ALJ erred in denying new and material evidence which demonstrated a worsening of Plaintiff's condition and functioning.  Specifically, Plaintiff argues this evidence required the ALJ to conduct a new analysis, and thus his decision to adopt the findings of the previous ALJ under *Drummond* and *Dennard* was in error.  For the foregoing reasons, this Court finds Plaintiff's argument is without merit.

In *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the Sixth Circuit confronted the question of whether the principles of res judicata applied against the Commissioner of Social Security on claims which have been previously determined.  *Id.* at 842. The court held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances."  *Id.*  Following the *Drummond* decision, the Social Security Administration ("SSA") issued Acquiescence Ruling 98-4(6), which explained how the SSA would apply *Drummond* within the Sixth Circuit, providing the following:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations, or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998).  Additionally, the Commissioner's internal guide sets out issues and factual findings precluded by res judicata under *Drummond*.  *Erb v. Comm'r of Soc. Sec.*, No. 13-CV-14798, 2015 WL 730130, at *20 (E.D. Mich. Feb. 19, 2015)

(*citing Hearings, Appeals, and Litigation Law Manual* ("HALLEX"), § I-5-4-62, 1999 WL 33615029, at \*8-9 (Dec. 30, 1999))*.  These include the RFC as well as other findings along the sequential evaluation process, such as whether a claimant meets or equals a listing.  *Id.*  The plaintiff carries the burden to show circumstances have changed since the prior ALJ's decision "by presenting new and material evidence of deterioration."  *Jones v. Comm'r of Soc. Sec.*, No. 3:14-CV-1236, 2015 WL 4394423, at \*5 (N.D. Ohio July 16, 2015) (*quoting Drogowski v. Comm'r of Soc. Sec.*, No. 10-12080, 2011 WL 4502988, at \*8 (E.D. Mich. July 12, 2011), *report and recommendation adopted*, 2011 WL 4502955 (E.D. Mich. Sept. 28, 2011)).

At the outset of his opinion, the ALJ acknowledged the res judicata principle and found that he was bound by the November 4, 2009 decision because there was no significant new or material evidence or changed circumstances that would warrant a departure.  (Tr. 26-28).  The ALJ found:

> I am bound to adopt the findings from the prior ALJ decision dated November 4, 2009 because there have been no changes in the law, regulations or rulings affecting the findings or the method for arriving at the findings and there exists no new and material evidence since the prior ALJ decision on November 4, 2009.  *See generally Drummond*, 126 F.3d 837 (6th Cir. 1997); *Dennard*, 907 F.2d 598 (6th Cir. 1990); ARs 98-4(6), 98-3(6).

(*Id.*).  The ALJ accordingly adopted the findings of the previous ALJ, including those findings relating to  Plaintiff's RFC, currently at issue on appeal.

A. Plaintiff does not point to new and material evidence that demonstrated a worsening of Plaintiff's condition and functioning such as to make the ALJ's application of *Drummond* and *Dennard* inappropriate

Plaintiff now contends that the ALJ's adoption of the prior ALJ's RFC was improper because there was new and material evidence providing a basis for a different finding. Specifically, Plaintiff argues the RFC did not adequately account for Plaintiff's new severe

impairment of COPD, or new and material evidence demonstrating a decrease in Plaintiff's residual functional capacity.

1. COPD

Examination notes of Dr. Weinberg show a diagnosis of COPD, and recorded that Plaintiff was positive for wheezing, on May 10, 2011.  (Tr. 351).  Plaintiff argues that his COPD was not actually diagnosed until this examination, so the diagnosis, along with subsequent treatment notes relating to his COPD, were not considered by the previous ALJ when conducting his RFC analysis.  Plaintiff argues that, despite finding his COPD as a severe impairment, the ALJ improperly ignored this new and material evidence, which he should have accounted for in a new RFC, rather than adopting the RFC of the previous ALJ which did not consider a COPD diagnosis.

After a review of the record and the ALJ's decision, the Court finds that the ALJ sufficiently accounted for any new evidence of COPD, and his finding that this evidence was not material is supported by the record.  At step two the ALJ added the severe impairment of COPD, a diagnosis of which appeared only once in the medical record, and considered the impairment under *Drummond* analysis. (Tr. 22-23, 25, 351).  While acknowledging "some documented bouts of wheezing," the ALJ specifically found that there were "no new pulmonary studies to show any potential material changes" and "doctors have not prescribed any medication or treatment for the claimant's COPD symptoms."  (Tr. 23).  Accordingly, the ALJ determined this minimal evidence of COPD, with no record of treatment or symptoms other than wheezing, did not add any material evidence to the medical evidence reviewed by the previous ALJ that would support additional limitations to the previous RFC.[2]  Plaintiff fails to point to any evidence that

---

[2] Although not considered by the ALJ because it was submitted subsequent to the decision, this Court notes that Dr. Weinberg, Plaintiff's treating doctor who diagnosed him with COPD, specified in his

15

undermines the ALJ's finding, and thus fails to demonstrate that the ALJ's application of *Drummond* and AR 98-4(6) was improper. *See Jones*, 2015 WL 4394423 at *5 (*quoting Drogowski*, 2011 WL 4502988 at *8).

This Court acknowledges the ALJ's error in stating COPD was considered by the previous ALJ, but finds this error to be harmless. (Tr. 22). *Keeton v. Comm'r of Soc. Sec.*, 583 Fed. App'x 515, 524 (6th Cir. 2014) ("Even where the ALJ's decision is based on mistakes, [a court will] affirm[] those conclusions if the mistakes constituted harmless error."); *see Myatt v. Comm'r of Soc. Sec.*, 251 Fed. App'x 332, 336 (6th Cir. 2007) (holding ALJ's mistake in reading of treatment plan was harmless error where "lack of medical evidence in support of further mental impairment…could not have tilted the scale in [claimant's] favor."); *see generally Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 158 (6th Cir. 2009) (finding no need to remand where ALJ erroneously included a misclassified job in its analysis, reasoning the error was harmless because his finding at this step was nonetheless supported by substantial evidence.). Very little evidence of symptoms of COPD exists in the record, as discussed above, beyond a one-time diagnosis. "'[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual.'" *Drogowski*, 2011 WL 4502988 at *9 (*quoting Balkema v. Comm'r*, 2011 WL 2601479 (W.D.Mich.2011) (*quoting McKenzie v. Commissioner of Social Security*, 2000 WL 687680 at *5 (6th Cir.2000), *citing Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir.1988)); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir.1988) ("[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition."). Thus, the ALJ's misstatement does not negate the lack of any material evidence of COPD appearing in the medical records, and does not undermine the ALJ's

---

medical source statement that Plaintiff did not require any environmental restrictions for pulmonary irritants. (Tr. 7).

determination that the RFC was appropriately adopted under *Drummond* because no new or material evidence showed Plaintiff required a more restrictive RFC.

2.  Back Impairments

The ALJ also sufficiently accounted for new imaging and treatment records relating to Plaintiff's back impairments, and reasonably concluded that this evidence was not material so as to avoid adoption of the previous ALJ's findings under *Drummond* and AR 98-4(6).  Noting the RFC provided for "a highly restrictive range of light work that reflects an individual who is experiencing significant back pain," the ALJ determined "the new evidence of record does not reflect any material changes in the impairment to the claimant's lumbar or thoracic spine that reasonably would suggest" a need for greater restrictions.  (Tr. 24).  Rather, he found the evidence supported the prior RFC finding, "namely that the claimant has some but no marked physical restrictions" due to back pain.  (Tr. 24-25).

The ALJ properly considered the new evidence and his conclusion is supported by substantial evidence.  The ALJ reviewed and considered MRIs dated June 2, 2011 and November 3, 2012, and found the documented degenerative changes were "not significantly worse than the slight and mild degenerative changes that the prior ALJ considered."  (Tr. 24).  The ALJ further found treatment notes did not show a material worsening of pain or functional restriction due to his back impairments, noting that Plaintiff continued to (1) present with moderate pain levels when taking his pain medication, and (2) exhibit normal muscle strength, range of motion, and reflexes in his back and lower extremities.  (*Id.*).  Additionally, the ALJ found the statements by Plaintiff's neurosurgeon that he was not a candidate for spinal surgery, and that the MRI images were "unremarkable," further substantiated his finding that Plaintiff's condition had not materially worsened.  (Tr. 25).  Plaintiff again fails to point to any evidence that was not

considered by the ALJ, or that would definitively stand as material evidence showing a deterioration of Plaintiff's condition since the rendering of the previous ALJ's decision. *Drogowski*, 2011 WL 4502988 at *8 (*citing Casey v. Sec. of Health & Human Servs.*, 987 F.2d 1230, 1232-33 (6th Cir. 1993)).

B. Remand is not appropriate for analysis of medical source statements submitted after the ALJ's decision

Plaintiff argues that remand is warranted to consider the medical source statements completed by Plaintiff's treating physician, Dr. Weinberg.  Plaintiff's oral hearing was held on August 16, 2012, and the ALJ rendered his decision on May 15, 2013. (Tr. 18-29, 37-70). Following the hearing and decision of the ALJ, Dr. Weinberg completed medical source statements regarding both Plaintiff's physical capacity, as well as his mental capacity, to work. (Tr. 6-9).  The mental report was dated August 2, 2013, and the physical report was dated September 11, 2013, three and four months, respectively, following the ALJ's decision finding Plaintiff was not disabled.  (*Id.*).

Sentence six of 42 U.S.C. § 405(g) permits a court to remand a case back to the ALJ for consideration of new evidence under certain circumstances.  The plaintiff must show that the evidence is (1) new, (2) material, and (3) that there was good cause for the failure to incorporate such evidence into the prior proceeding.  42 U.S.C. § 405(g); *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984) (per curiam).  Remand is only proper when all three elements are satisfied.

The Court may not reverse an ALJ's decision on the basis of evidence first submitted to the Appeals Council. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). In cases such as the instant case, where the new evidence was not submitted to the ALJ before he rendered his

decision and the Appeals Council declined the claimant's request for review even with the new evidence, the Court's role is to review the ALJ's decision and determine whether it was supported by substantial evidence in the record at the time the ALJ issued his decision. *Id.* However, Plaintiff also seeks remand in order for the ALJ to consider the effect that Dr. Weinberg's medical source statements would have had upon the ALJ's disability determination. Accordingly, the Court will discuss whether the August 2, 2013 and September 11, 2013 statements warrant remand under sentence six of 42 U.S.C. § 405(g).

1. New

To be considered "new," the evidence at issue must not have been "in existence or available to the claimant at the time of the administrative proceeding." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (*citing Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).  In addition, new evidence cannot merely be cumulative of evidence already in the record.  *Elliot v. Apfel*, 28 F. App'x 420, 423 (6th Cir. 2002) (unpublished opinion) (*citing Robertson v. Shalala*, 1996 WL 384542, at *3 (6th Cir. July 8, 1996)).  The Court finds that the medical source statements at issue are, indeed, new, as the ALJ specifically noted in his decision that no medical source statements from treating sources were in the record at the time of his decision.  (Tr. 25).

2. Material

However, remand is not appropriate because the medical source statements are not material.  Evidence is material when there is a reasonable probability that the ALJ would have decided the claim differently if presented with the new evidence. *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 484 (6th Cir. 2006) (*quoting Foster*, 279 F.3d at 357. According to Plaintiff, these statements are material because they were completed just months

19

following the ALJ's decision and are based upon conditions that Plaintiff was experiencing at the time of that decision.  (Pl. Brief, pp. 14-15).  Further, Plaintiff alleges that there is a reasonable probability that the ALJ would have reached a different disposition of the claim had he considered this evidence because the statements are consistent with the medical evidence, and because they were provided by a doctor with whom Plaintiff had a long treatment relationship.  (*Id.*).

Plaintiff fails to persuade this Court that the medical source statements fall within the Administration's definition of material evidence.  First, despite Plaintiff's assertions, there is no evidence that these statements relate back to Plaintiff's condition during the relevant period.  *Oliver v. Sec. of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (finding new evidence compiled after the ALJ's decision was not material, even though it may have shown a worsening in a claimant's condition, because it did not "reveal further information about the claimant's ability to perform…work" at the time of the ALJ's decision.).  Rather, the statements reflect only the dates that they were completed, *after* the May 15, 2013 decision.  (Tr. 6-9).  Second, despite the longevity of his treatment relationship with Plaintiff, the check-box form opinions of Dr. Weinberg included only minimal explanation in support of his findings.  Without pointing to specific findings or evidence, Dr. Weinberg merely stated his opinion was based on "in-office observations" and questioning of the patient, and could easily be discredited by the ALJ.  (Tr. 6-7).  *See Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 176 (6th Cir. 2009) (finding the ALJ did not err in discounting a doctor's opinion where the doctor failed to identify objective medical findings in support when filling out an opinion questionnaire); *see Kepke v. Comm'r of Soc. Sec.*, No. 15-1315, 2016 WL 124140, at *4 (6th Cir. Jan. 12, 2016) ("While checklist opinions are not per se unreliable…it is not improper for an ALJ to take into

consideration the format of a medical opinion, especially in light of other factors in the record that signal unreliability.") (*citing Price*, 342 Fed. App'x at 176).  Finally, despite his assertion that the restrictions provided for in Dr. Weinberg's statements are consistent with the record, Plaintiff fails to point to specific evidence that would support such severe restrictions beyond those provided for in the RFC, which was based on the evidence of record.  Accordingly, the undersigned is not persuaded that the medical source statements would have caused the ALJ to reach a different disposition regarding Plaintiff's ability to work.

### 3. Good Cause

Further, even assuming *arguendo* that the material requirement was met, Plaintiff has not shown good cause.  A claimant shows "good cause" by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Cotton*, 2 F.3d at 695.  Plaintiff's apparent good cause argument is that the statements were not available at the time of the hearing because they were completed after the ALJ's decision, and after Plaintiff obtained new counsel.  However, the Sixth Circuit "has taken a harder line on the good cause test," and "in order to show good cause the complainant must give a valid reason for his failure to obtain evidence prior to the hearing." *Oliver*, 804 F.2d at 966 (*citing Willis*, 727 F.2d at 554).  Plaintiff had a long-standing treatment relationship with Dr. Weinberg, and does not provide any reason that Dr. Weinberg could not have completed a medical source statement prior to the hearing. *See id.* (finding good cause was not shown where claimant did not provide a valid reason for not obtaining medical testing prior to his hearing for benefits).

As noted by the government in its brief, Plaintiff's statement that he obtained new counsel following the hearing does nothing to minimize or negate the good cause requirement. "There is absolutely no statutory or decisional authority…that the alleged incompetence of

[claimant's] first attorney constitutes 'good cause'" for a sentence six remand.  *Taylor v. Comm'r of Soc. Sec.*, 43 Fed. App'x 941, 943 (6th Cir. 2002); *see Delgado v. Comm'r of Soc. Sec.*, 30 Fed. App'x 542, 549 (6th Cir. 2002) (*citing Sears v. Sec'y of Health & Human Servs.*, 840 F.2d 394, 402 (7th Cir. 1988) (ALJ entitled to presume that a claimant who was represented by counsel has made his best case)).  As such, any implication that Plaintiff's failure to obtain the medical source statements prior to the hearing was due to attorney incompetence has no bearing on the good cause requirement.

Furthermore, Plaintiff failed to request at the hearing that the record remain open for the submission of new evidence.  The Sixth Circuit has noted that the "good cause requirement [is] not met where [the] claimant did not request at [the] ALJ hearing that the record remain open until additional evidence could be submitted."  *Delgado*, 30 F. App'x at 549 (*citing Willis*, 727 F.2d at 554).  Although Plaintiff's counsel mentioned Plaintiff was trying to get an appointment to see a specialist and get another MRI performed, she did not request that the record remain open.  Accordingly, Plaintiff fails to meet the good cause requirement for a sentence six remand.

In conclusion, and in accordance with the foregoing discussion, this Court finds the ALJ properly adopted the findings of the previous ALJ under *Drummond*, and the decision of the ALJ, including the RFC, is thus supported by substantial evidence.  Further, remand for analysis of the medical source statements of Dr. Weinberg is not appropriate under 42 U.S.C. § 405(g).

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date:  March 15, 2016.